<u>**NOT FOR PUBLICATION**</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| RAMIRO DELGADO,<br><br>    *Plaintiff*,<br><br>  v.<br><br>AUTO GALLERY LLC and AHMED SOLIMAN,<br><br>    *Defendants*. | Civil No.: 20-cv-18593 (KSH) (CLW)<br><br><br>**<u>OPINION</u>** |

**<u>Katharine S. Hayden, U.S.D.J.</u>**

### I. Introduction

This matter comes before the Court on the motion (D.E. 9) of plaintiff Ramiro Delgado for default judgment against defendants Auto Gallery LLC and Ahmed Soliman. For the reasons set forth below, the motion will be granted, although Delgado will be provided a brief opportunity to supplement his showing with respect to the liquidated damages he seeks, as explained *infra*.

### II. Background

The complaint alleges as follows. Auto Gallery is a used car dealership in Lodi, New Jersey. (D.E. 1, Compl. ¶¶ 8-9.) Soliman is asserted to be "an officer, director, shareholder and/or person in control of Auto Gallery" and to "exercise[] significant control over the company's operations and has the authority to hire, fire, and discipline employees, set employees' work schedules and conditions of employment, determine the rate and method of payment for employees, and maintain employment records." (*Id.* ¶ 11.)

Delgado worked for defendants as a car washer from around November 2018 to late March 2020, and from May 2020 to June 6, 2020. (*Id.* ¶ 21.) Between these two time periods, he was instructed not to report to work due to the statewide shutdown caused by the COVID-19

1

pandemic.  (*Id.* ¶ 24.)  His principal job duties involved washing, drying, and detailing cars and cleaning the office.  (*Id.* ¶ 22.)

From November 2018 to March 2020, Delgado "regularly worked Mondays through Saturdays from approximately 9:00 a.m. until 7:00 p.m., with a thirty (30) minute daily meal break," averaging 57 hours per week.  (*Id.* ¶ 23.)  From May to June 2020, he "regularly worked Mondays through Saturdays from approximately 10:00 a.m. until 7:00 p.m.," with a 30-minute meal break, averaging 51 hours per week.  (*Id.* ¶ 26.)  He was paid $500.00 per week regardless of the number of hours he worked.  (*Id.* ¶ 27.)

On December 9, 2020, Delgado filed a four-count complaint against Auto Gallery and Soliman.  Count 1 alleges that defendants knowingly failed to pay him proper overtime wages in violation of the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 *et seq.*  The remaining claims are all brought under New Jersey state law.  Count 2 alleges that defendants knowingly failed to pay Delgado overtime wages in violation of the New Jersey Wage and Hour Law (NJWHL), N.J.S.A. § 34:11-56a *et seq.*  Count 3 alleges that defendants failed to pay him the required minimum wages, in violation of the NJWHL. Count 4 alleges that defendants failed to timely pay him all wages (overtime and regular) at least twice per calendar month and not later than the regular payday for the pay period in which he was terminated, in violation of the New Jersey Wage Payment Law (NJWPL), N.J.S.A. § 34:11-4.1 *et seq.*

Soliman was personally served on December 17, 2020 (D.E. 6), and Auto Gallery was served via Soliman, its general agent, on the same date (D.E. 5).  Neither defendant has appeared in the action, and the Clerk of the Court entered default against them on March 1, 2021.  Delgado subsequently filed his motion for default judgment.

### III. Legal Standard

The Court may enter default judgment under Fed. R. Civ. P. 55(b)(2) against a properly served defendant who does not file a timely responsive pleading. *Chanel, Inc. v. Gordashevsky*, 558 F. Supp. 2d 532, 535 (D.N.J. 2008) (Kugler, J.). Although cases are to be decided on their merits where practicable, whether to grant a motion for default judgment is "largely a matter of judicial discretion." *Id.* In ruling on the motion, the Court accepts the well-pleaded factual allegations in the complaint as true but "need not accept the moving party's legal conclusions or allegations relating to the amount of damages," and must "ascertain whether 'the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law.'" *Id.* at 535-36 (citations omitted).

In addition to determining that the facts state a legitimate cause of action and that the movant has established its damages, the Court must "make explicit factual findings as to: (1) whether the party subject to default has a meritorious defense, (2) the prejudice suffered by the party seeking default, and (3) the culpability of the party subject to default." *Doug Brady, Inc. v. N.J. Bldg. Laborers Statewide Funds*, 250 F.R.D. 171, 177 (D.N.J. 2008) (Ackerman, J.) (citing *Emcasco Ins. Co. v. Sambrick*, 834 F.2d 71, 74 (3d Cir. 1987)). The Court must also be satisfied that it has subject matter and personal jurisdiction, and that the defendant was properly served. *Trs. of the N.J. B.A.C. Health Fund v. Rhodes*, 2017 WL 3420912, at *2 (D.N.J. Aug. 9, 2017) (Bumb, J.); *Laborers Int'l Union of N. Am. Local No. 199 Welfare, Pension, Apprenticeship & Training, Annuity v. Ramco Solutions*, 2013 WL 4517935, at *2 (D.N.J. Aug. 26, 2013) (Kugler, J.). *See also Ayres v. Jacobs & Crumplar, P.A.*, 99 F.3d 565, 569 (3d Cir. 1996) ("In order to impose personal liability upon a defendant or obligate him or her in favor of a

plaintiff, a court must be vested with jurisdiction over the parties as well as subject matter jurisdiction.").

## IV. Analysis

The threshold requirements for entry of default judgment are met here. The Court has subject matter jurisdiction: it has federal question jurisdiction over Delgado's FLSA claim under 28 U.S.C. § 1331, and supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367(a). Personal jurisdiction lies in view of defendants' alleged connections with this state (Compl. ¶¶ 8-10), and both were properly served. (*See* D.E. 5, 6; Fed. R. Civ. P. 4(e)(2)(A), (h)(1)(B).) Defendants have not answered or otherwise responded to the complaint, and default has been entered against them.

Delgado has also pleaded plausible claims for relief in counts 1 and 2. Count 1 alleges a failure by defendants to pay proper overtime wages in violation of the FLSA. "'The FLSA establishes federal minimum-wage, maximum-hour, and overtime guarantees that cannot be modified by contract.'" *Davis v. Abington Mem'l Hosp.*, 765 F.3d 236, 241 (3d Cir. 2014) (quoting *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 69 (2013)). Relevant here, the FLSA generally requires employers to "pay one and one-half times the employer's regular wage for hours worked in excess of forty hours per week." *Id.* (citing 29 U.S.C. § 207). An employer that violates that requirement is liable to the affected employee in the amount of the unpaid overtime compensation, as well as "an additional equal amount as liquidated damages." *Id.* (citing 29 U.S.C. § 216(b)). To succeed, the employee must "'prove that he worked overtime hours without compensation, and he must show the amount and extent of his overtime work as a matter of just and reasonable inference.'" *Id.* (quoting *Davis v. Food Lion*, 792 F.2d 1274, 1276

4

(4th Cir. 1986)).¹ And to state a plausible claim for relief, the employee " 'must sufficiently allege [forty] hours of work in a <u>given</u> workweek <u>as well as</u> some uncompensated time in excess of the [forty] hours.' " *Id.* at 242 (quoting *Lundy v. Catholic Health System of Long Island, Inc.*, 711 F.3d 106, 114 (2d Cir. 2013) (alterations in original)).

Here, Delgado has alleged that he worked in excess of 40 hours during both periods of employment with defendants: from November 2018 to March 2020, he worked from 9:00 a.m. to 7:00 p.m. on Mondays through Saturdays, with a 30-minute daily meal break, averaging 57 hours of work per week. In May 2020, he allegedly worked from 10:00 a.m. to 7:00 p.m., with 30-minute daily meal breaks, averaging 51 hours of work per week.² He further alleges that he was not paid one-and-a-half times his regular wage for the excess hours, but instead was paid a fixed rate of $500 per week regardless of the number of hours he worked. These allegations suffice to meet the pleading requirements set forth in *Davis*. *See also Qu Wang v. Fu Leen Meng Rest. Ltd. Liab. Co.*, 2018 WL 1027446, at *1, 3 (D.N.J. Feb. 23, 2018) (Hillman, J.) (concluding based on materially similar allegations that plaintiff had stated an overtime claim under FLSA).

Delgado's FLSA claim properly extends liability to Soliman as well. An "employer" includes "any person acting directly or indirectly in the interest of an employer in relation to an employee," 29 U.S.C. § 203(d), a definition that is given a "broad interpretation" to "effectuate the FLSA's liberal, remedial purposes." *Qu Wang*, 2018 WL 1027446, at *2 (internal quotation

---

¹ Here, the "inference" route is appropriate in the absence of employer records. (*See, e.g.*, Compl. ¶ 31 (employer failed to track hours or to require plaintiff to record his time).
² In a declaration submitted with his motion for default judgment, Delgado clarified that with respect to his final week of work, from June 1-6, 2020, he worked four and a half days, from 10:00 a.m. to 7:00 p.m. with a 30-minute daily meal break, for a total of 38.25 hours. (D.E. 9-1, Delgado Decl. ¶ 14.) He also states that he took June 5 and half of June 4 as sick days, and that he was paid $380 for that week. (*Id.* ¶¶ 16, 19.) He does not appear to state a claim for unpaid overtime wages with respect to this workweek, nor does he seek any damages or other relief for that particular week.

5

marks and citation omitted). Whether one is included in the definition of "employer" "depends on control," and relevant factors include whether the alleged employer "(1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Id.* Delgado's complaint alleges that Soliman possessed this authority and control over the pertinent aspects of his employment. Delgado has also certified that throughout his employment, Soliman "controlled Auto Gallery's operations and had the authority to hire, fire, and discipline employees; to set work schedules; and to determine the terms and conditions of [Delgado's] employment, including [his] rates and method of pay." (D.E. 9-1, Delgado Decl. ¶ 8.) He also states that throughout his employment, he "reported directly to Soliman," and that Soliman was the person who told him to stop reporting to work during the state shutdown and later contacted him and asked him to return to work in May 2020. (*Id.* ¶¶ 9, 11-12.)

Delgado has also pleaded a plausible claim for unpaid overtime wages under the NJWHL, the claim asserted in count 2. *See Brown v. Apothaker & Assocs., P.C.*, 2018 WL 1605148, at *2 (D.N.J. Apr. 3, 2018) (Hillman, J.) ("Because the NJWHL mirrors its federal counterpart, Plaintiff has sufficiently pleaded his claim for Defendants' violation of the NJWHL."). He can, however, only recover damages for his unpaid overtime wages once, *Lin v. Fada Grp. Inc.*, 2021 WL 423757, at *3 n.4 (Feb. 4, 2021) (Vazquez, J.), a limitation Delgado recognizes in calculating the amount of damages allegedly owed to him.[3]

---

[3] Although Delgado's notice of motion purports to seek default judgment on all four claims, his supporting papers offer no argument in support of counts 3 or 4 and seek no relief on them. In fact, although the attorney declaration submitted in support of Delgado's motion offers damages calculations for the alleged minimum wage violations, it also provides that Delgado's "damages for minimum wages are subsumed within his overtime damages" and that he is not seeking any minimum wage damages that are not subsumed in the overtime damages. (D.E. 9-2, Sackowitz Decl. ¶ 26 & n.1; *see also* Sackowitz Decl., Ex. 5 (damages calculations reflecting only

Additionally, the *Emcasco* factors are met here.  No meritorious defense is evident from the record.  Defendants' failure to appear or to file any response to the complaint has prevented Delgado from prosecuting this action and obtaining relief, to his prejudice.  *See Qu Wang*, 2018 WL 1027446, at *3 ("Plaintiff will be prejudiced absent a default judgment because Defendants' failure to respond to Plaintiff's claims leaves Plaintiff with no other means to vindicate his claims.").  Finally, the Court may infer the defendants' culpability from their failure to respond.  *See id.*  This is particularly appropriate here, given the communications between the parties as set forth in the motion record: in a letter dated December 28, 2020, shortly after defendants were served, Soliman sent a letter on Auto Gallery letterhead to Delgado's attorney claiming that Delgado had never been employed by Auto Gallery and that defendants "disagree[d] with all of the allegations listed in the complaint." (Sackowitz Decl., Ex. 3.)  The letter continued that defendants "feel this is an attempt to get money out of Auto Gallery under false pretenses and should be dropped before we are forced to incur expenses which we will seek to be reimbursed for by the plaintiff," and purported to be "our answer to the . . . complaint." (*Id.*)

In a January 21, 2021 responsive letter sent by regular mail, certified mail, and fax, Delgado's attorney disputed the contention that Delgado had not been an employee, observed that the December 28 letter was not a valid answer or response to the complaint, and stated that while defendants were in default for failure to answer, Delgado would give them until February 1, 2021 before filing any motion for default judgment. (Sackowitz Decl., Ex. 4.)  Ultimately, Delgado waited nearly another month before seeking default, and additional three weeks after that to file his motion for default judgment – affording defendants ample time to respond or even

---

calculations of unpaid overtime wages, along with prejudgment interest).)  Accordingly, the Court need not evaluate whether Delgado has pleaded plausible claims in counts 3 and 4.

7

appear in the action, which, to date, they have still failed to do.  This silence despite defendants' indisputable awareness of the action bespeaks culpability sufficient to warrant default judgment. *Qu Fang*, 2018 WL 102776, at *3 (noting that culpable conduct consists of "'dilatory behavior that is willful or in bad faith'" (quoting *Gross v. Stereo Component Sys., Inc.*, 700 F.2d 120, 123 (3d Cir. 1983)).

The final matter for the Court's consideration is the monetary relief to which Delgado is entitled on his overtime claims under the FLSA and NJWHL.  Courts have "considerable latitude" in determining the amount of damages to be awarded on a default judgment motion. *Saiyed v. Archon, Inc.*, 2021 WL 3561219, at *2 (D.N.J. Aug. 11, 2021) (Vazquez, J.) (quoting *Paniagua Grp., Inc. v. Hospitality Specialists, LLC*, 183 F. Supp. 3d 591, 605 (D.N.J. 2016)). By statute, Delgado is entitled to damages in the amount of his unpaid overtime wages.  29 U.S.C. § 216(b).  He may permissibly rely on estimates based on his own recollection in supplying the factual predicates for this calculation. *Qingwei Ma v. Chef Jon's Authentic Chinese Cuisine*, 2020 WL 6111037, at *4 (D.N.J. Oct. 16, 2020) (Salas, J.).  (*See* Delgado Decl. ¶¶ 6, 10-19.)

The amount of unpaid overtime wages due to Delgado is based on his regular rate of pay, the number of overtime hours he worked per week, and the number of weeks affected.  *See* 29 C.F.R. §§ 778.109, 778.113; *Qingwei Ma*, 2020 WL 6111037, at *4.  For his first stint with defendants, Delgado certifies that he worked 17 hours of overtime each week for 72 weeks.  For his second, he estimates that he worked 11 hours of overtime each week for 4 weeks.  The "regular rate" under the FLSA is an hourly rate, and for employees who receive a weekly salary, the regular hourly rate "is computed by dividing the salary by the number of hours which the salary is intended to compensate."  29 C.F.R. §§ 778.109, 778.113(a).  Delgado impliedly argues

that his weekly salary was intended to compensate him for 40 hours each week, resulting in a regular rate of $12.50/hour ($500/week / 40 hours/week = $12.50/hour) and an overtime rate of $18.75 ($12.50 * 1.5). Multiplying those rates by the overtime hours and total number of weeks affected by unpaid overtime wages results in a total of $23,775.00. (*See* Sackowitz Decl., Ex. 5.)[4]

In addition to unpaid overtime wages, Delgado seeks liquidated damages under the FLSA and/or under the NJWHL. "Liquidated damages are presumed for an FLSA overtime violation," and "'[t]o avoid mandatory liability for liquidated damages, an employer must show that it acted in good faith and that it had reasonable grounds for believing that it was not violating the Act.'" *Saiyed*, 2021 WL 3561219, at *4 (quoting *Sec'y U.S. Dept. of Labor v. Am. Future Sys., Inc.*, 873 F.3d 420, 433 (3d Cir. 2017)). Given their default in this action, defendants have failed to make any such showing, and there is also no indication in the record that they were acting in good faith or reasonably believed they were not violating the statute.[5] *Qu Wang*, 2018 WL 1027446, at *5

---

[4] In calculating damages, the attorney certification relies primarily on an explanation why the "fluctuating workweek" methodology under 29 C.F.R. § 778.114, which would calculate the regular rate by dividing the weekly pay by the total number of hours worked (resulting in a far lower regular pay rate in this case) does not apply. That one methodology does not apply does not compel the conclusion that a more favorable one chosen by the plaintiff *does* apply, and the moving papers do not clearly lay out the path to the figures sought. Having considered the regulations, including the methodology in § 778.113(a) and in § 778.109, which states that the maximum hours standard used in the examples that follow, including § 778.113(a), is 40 hours in a workweek, and in the absence of any challenge to this methodology from the defendants—who, based on the correspondence described earlier, were clearly aware of the claims made in this lawsuit and chose not to mount any defense to them, even in the face of an express warning that default judgment would be sought—the Court will accept the calculations proposed by Delgado. *See also Qu Wang*, 2018 WL 1027446, at *4 (employing similar methodology). The latter facts support the Court's ruling here, with the observation that the better practice, and the expectation of the Court, is for a plaintiff to clearly articulate the legal basis for the specific dollar amounts sought.

[5] To the contrary, as noted earlier, the complaint alleges that they "neither tracked the hours [Delgado] worked nor required [him] to record his time." (Compl. ¶ 31.)

9

("Where, as here, a defendant has failed to appear, and has not presented any evidence regarding good faith, a court should award liquidated damages to the plaintiff."); 29 U.S.C. § 260. Delgado is, therefore, entitled to recover liquidated damages under the FLSA in an equal amount to the amount of unpaid overtime wages that will be awarded.

Delgado argues, however, that he should be awarded 200% of the unpaid overtime amount in liquidated damages under the NJWHL, rather than 100% under the FLSA. The NJWHL currently provides that a plaintiff may recover the unpaid wages due to him, "and an additional amount equal to not more than 200 percent of the unpaid minimum wages . . . as liquidated damages." N.J.S.A. § 34:11-56a25. However, as Delgado concedes (Sackowitz Decl. ¶ 41 n.2), this language reflects a revised version of the statute that became effective on August 6, 2019. Prior to the amendment, liquidated damages were not available for overtime violations under the NJWHL. *See, e.g.*, *Qu Wang*, 2018 WL 1027446, at *5. Delgado offers no argument in support of retroactively applying the amendments to reach wages he seeks going back to November 2018, nor does he apportion the pre-August 6, 2019 damages that would garner a 100% liquidated damages amount under the FLSA and the remaining damages that would, presumably, be subject to 200% liquidated damages under the NJWHL.[6] Retroactivity of legislation involves a multifactor analysis under New Jersey law, one that the present motion record does not permit the Court to conduct. *Cf. Jones v. Hesp Solar*, 2021 WL 1904734, at *5-

---

[6] The Court also notes that while FLSA, in 29 U.S.C. § 216(b), makes a liquidated damages award of 100% mandatory (insofar as the employer fails to establish the good faith defense in 29 U.S.C. § 260), the NJWHL provides that the employee "may" recover, along with unpaid wages, "an additional amount equal to not more than 200 percent" of lost wages (with a similar good faith defense available for first offenses that are promptly rectified). N.J.S.A. § 34:11-56a25. The motion papers do not address this issue or explain why this language mandates a maximum award here.

10

10 (D.N.J. May 12, 2021) (Chesler, J.) (examining whether amendments to different wage law enacted simultaneously with amendments to NJWHL applied retroactively).

In view of the foregoing, the Court will award the liquidated damages amount called for by the FLSA: $23,775.00.  The Court will, however, afford Delgado a brief opportunity to file a supplemental submission to support the alternative award of 200% liquidated damages on all or part of the amount to be awarded in unpaid overtime wages.  *Accord Qu Wang*, 2018 WL 1027446, at *6.

Next, Delgado also seeks an award of reasonable attorneys' fees and costs.  He is entitled to this relief by statute.  *See* 29 U.S.C. § 216(b); N.J.S.A. § 34:11-56a25.  Delgado seeks $3,877.50 in attorneys' fees and $893.08 in recoverable costs,[7] supporting this request with his attorney's declaration and an attached exhibit describing the services rendered.  (Sackowitz Decl. ¶¶ 42-46 & Ex. 6.)  The Court concludes that these amounts, which reflect 12.5 hours of attorney time between two attorneys (9 hours at $285/hour and 3.5 hours at $375/hour), are reasonable.  *Accord Qu Wang*, 2018 WL 1027446, at *5 (concluding that similar figures in FLSA default judgment context were reasonable and collecting cases).[8]

Finally, Delgado seeks prejudgment interest as a matter of the Court's discretion.  (D.E. 9-10, Moving Br. 8.)  Because he will be awarded liquidated damages, the Court declines to exercise its discretion to award prejudgment interest.  *Stillman v. Staples, Inc.*, 2009 WL 1437817, at *23 (D.N.J. May 15, 2009) (Shwartz, Mag. J.) (explaining that because liquidated damages under FLSA serve same purpose as prejudgment interest—compensation to plaintiff for

---

[7] The latter amount represents the filing fee for the action, the fee for service of process, and fees for translation services.  (Sackowitz Decl. ¶ 46 & n.3.)
[8] Delgado's counsel's declaration erroneously totals the requested attorneys' fees and costs as $5,426.58.  (Sackowitz Decl. ¶ 47; *see also* D.E. 9-9, Proposed Judgment.)  The correct sum, which will be reflected in the judgment, is $4,770.58.

11

the delay in access to overtime wages due to him—awarding both would result in "windfall"); *accord Krause v. Cherry Hill Fire Dist. 13*, 969 F. Supp. 270, 279 n.12 (D.N.J.1997) (Orlofsky, J.).[9]

### V.     Conclusion

The Court will grant the motion for default judgment as set forth in this opinion. Delgado will be awarded $23,775.00 in unpaid overtime wages, plus $23,775.00 in liquidated damages. He will further be awarded $3,877.50 in attorneys' fees and $893.08 in costs. Delgado may file a supplemental brief, with any necessary supporting papers, within 7 days as to the liquidated damages he seeks under the NJWHL, and the Court will stay entering a judgment pending that submission. Absent presentation of a timely submission that adequately addresses the issues identified herein with respect to that damages request, final judgment will be entered reflecting the above amounts.

An appropriate order will follow.

Date: December 10, 2021

/s/ Katharine S. Hayden
Katharine S. Hayden, U.S.D.J

---

[9] The cases Delgado cites in his brief as awarding prejudgment interest beginning at the midpoint of the plaintiff's employment both expressly recognized that prejudgment interest was not available under FLSA where liquidated damages had been awarded, and awarded prejudgment interest under a New York labor statute. (*See* Moving Br. 8.) Delgado does not argue that any corresponding entitlement arises under New Jersey labor statutes, specifically the NJWHL, and instead simply posits that a New Jersey court rule supplies "guidance" on the appropriate *rate* of interest. (*Id.*)